CIACCIO, Judge.
Following the presentation of plaintiff's evidence the trial judge granted defendant’s motion for a directed verdict. From the judgment dismissing his suit, plaintiff appeals. We reverse.
Plaintiff leased from defendant an enclosed section of a warehouse. Plaintiff used this area to store vending machines. Prior to entering into the lease plaintiff inspected the premises and voiced no complaint. During the lease plaintiff held the only keys to the leased area, completely controlling access to his storage area.
The lease commenced on a month-to-month basis in November, 1980. In September, 1983, plaintiff discovered that some of the stored machines were unduly corroded. In December, 1983, defendant sold the warehouse. In February, 1984, a corrosion expert hired by plaintiff inspected the machines and the storage area. He discovered a large hole in a wall at the rear of the storage area. The hole opened into an adjacent refrigerated storage area.
The corrosion, expert, Mr. Daughdrill, ultimately concluded that the corrosion of the machines was caused by water condensa *935 tion collecting on the machines as a result of the cold air from the refrigerated area entering the generally warmer non-climate controlled area were the machines were stored. Mr. Daughdrill testified that there was no way to determine the amount of time over which the machines had corroded, but that it would have taken a considerable amount of time. He stated that more condensation would cause more corrosion and that the most condensation would occur in the summer months when the general atmospheric humidity and the temperature differential between the two areas would be greatest.
The record contains no evidence of how, when, why, or by whom the hole came to be. Prom the record descriptions of the premises, the hole is in an area which plaintiff calls a “cubby hole” which, although accessible from his leased area, he did not consider as part of his usable storage space and did not use. During his inspection Mr. Daughdrill had been attracted to the area when he noticed some wetness on the floor near the wall. He found the hole behind a pallet which had been leaning against the wall. The hole was approximately eight inches above the floor and roughly twelve inches square.
Plaintiff and Mr. Daughdrill were the only witnesses to testify. When plaintiff rested his case defendant moved the court for a directed verdict. The court granted a directed verdict, relying upon its interpretation of the lessor’s obligations to the lessee under La.C.C. Art. 2692. The court held that in order for a lessor to fulfill his obligations under Article 2692 that he must have knowledge of any defective condition and that the evidence in this case did not show that the lessor had knowledge, either actual or constructive.
On appeal plaintiff relies on La.C.C. Art. 2695 to argue that the trial court erred. Considering the clear language of Article 2695 we hold that the trial court erred as a mattef of law. Article 2695 provides:
Lessor’s liability for damages from vices and defects
The lessor guarantees the lessee against all the vices and defects of the thing, which may prevent its being used even in case it should appear he knew nothing of the existence of such vices and defects, at the time the lease was made, and even if they have arisen since, provided they do not arise from the fault of the lessee; and if any loss should result to the lessee from the vices and defects, the lessor shall be bound to indemnify him for the same.
Under Article 2695 there is no requirement that the lessor know of the defect and liability is imposed once the defect is shown to be a cause of the harm. Robertson v. First of Georgia Underwriters, 464 So.2d 927 (La.App. 4th Cir.1985); Wilson v. Voss, 361 So.2d 312 (La.App. 1st Cir.1978). See also Keller v. Kelly, 378 So.2d 1006 (La.App. 4th Cir.1979), writ denied 380 So.2d 624 (La.1980), where in the absence of evidence of lessee fault the burden shifts to lessor to exonerate himself.
The trial court’s erroneous interpretation that the law requires lessor knowledge renders defective his judgment granting a directed verdict. We, therefore, reverse. By our reversal, however, we do not hold that plaintiff should prevail. Other than concluding an absence of lessor knowledge the trial court reached no apparent factual conclusions, made no apparent credibility evaluations, nor assigned any degrees of weight to the evidence presented. For the purposes of this opinion we have accepted plaintiff’s evidence of a defect, the hole into a refrigerated area, and his expert’s testimony that the cold air caused plaintiff’s damage, the corrosion of his machines. We remand this case for completion of the trial and for the trial judge to make such determinations of weight, credibility, and fact, as he deems appropriate.
For the reasons assigned, we reverse the judgment of the district court granting a directed verdict on plaintiff’s demand. The judgment on defendant’s reconventional demand was not appealed and is not affected by this decree. Defendant’s third-party demands against its insurers remain extant, *936 as we remana this matter for further proceedings.
REVERSED AND REMANDED.